UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BERNARD HICKS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:19-cv-11250-IT |
| | * | |
| MASSACHUSETTS DEPARTMENT | * | |
| OF TRANSPORTATION, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

January 5, 2021

I.  Introduction

Plaintiff Bernard Hicks, a former employee of Defendant Massachusetts Department of Transportation ("MassDOT"), alleges that MassDOT and its employees Maria Rota, Julian Tynes, and Roland Francois[1] refused to accommodate his disability, retaliated against him for seeking accommodations, and eventually terminated Hicks because of his disability. See Second Amended Complaint ("Sec. Am. Compl.") 2, 6, 11 [#13].[2] Pending before the court is Defendants' Motion to Dismiss or, in the Alternative, to Stay ("Mtn. to Dismiss") [#22]. For the reasons that follow, the Motion [#23] is GRANTED and the case will be dismissed.

---

[1] Plaintiff incorrectly identifies Defendant Roland Francois as "Roland Francis." Sec. Am. Compl. 2 [#13]; see Defendant's Memorandum in Support of Motion to Dismiss 1 n.1 [#23].

[2] The first five pages of the Second Amended Complaint [#13] are set forth on the AO's Pro Se Complaint for a Civil Case form which does not use consecutive paragraph numbering. The Second Amended Complaint continues with an additional statement which starts with an unnumbered paragraph, and then proceeds using paragraph numbers. The court has cited to paragraph numbers where available (with ¶ symbol), and otherwise to ECF pagination.

II.   Procedural History

On June 5, 2019, Plaintiff filed a *pro se* Complaint [#1] against Defendants Rota, Tynes, Francois, and MassDOT alleging violations of Title VII of the Civil Rights Act of 1964 and unspecified state law violations. This court subsequently granted Plaintiff's motion for leave to proceed in forma pauperis, but ordered Plaintiff to "clearly set[] out his claims" and "identify the alleged misconduct that constitutes the discrimination and/or retaliation of which he complains." Order [#7]. On October 1, 2019, Plaintiff filed an Amended Complaint [#8], invoking the Americans with Disabilities Act ("ADA") rather than the Title VII of the Civil Rights Act as the basis for jurisdiction in this court. Id. at 3. On February 12, 2020, after the court issued summonses, Plaintiff filed a Second Amended Complaint [#13].

Defendants responded with the pending motion, seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, a stay of proceedings in light of a substantially overlapping action in state court that Plaintiff had filed after initiating suit here. Motion to Dismiss or, in the Alternative, to Stay [#22]; see also Civil Complaint, Hicks v. Mass. Dep't of Transp., et al., No. 1984-CV-02462 (Mass. Super. Aug. 1, 2019) [#23-1].[3] Plaintiff opposed Defendants' motion, Plaintiff's Opposition [#25], and also filed a Motion to Supplement his Opposition [#26], which the court allowed as unopposed. Elec. Order [#29].

---

[3] Defendants' supporting Memorandum 3 n.2 [#23] refers "to both the amended complaint, [Doc. 8], and the second amended complaint, [Doc. 13]" and suggests that "Hicks' additional allegations in the second amended complaint do not bear on the defendants' arguments." Hicks did not request leave of court to file his Second Amended Complaint [#13]. See Fed. R. Civ. P. 15 ("A party may amend its pleading once as a matter of course…In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). Finding no injustice results from allowing, *post hoc*, the filing of Plaintiff's Second Amended Complaint [#13], the court treats the Second Amended Complaint [#13] as the operative document.

On September 18, 2020, Defendants provided this court with notice that the state court had granted Defendants' motion to dismiss the state court action and entered judgment. See Notice [#27].

III. Facts as Alleged in Plaintiff's Second Amended Complaint

Plaintiff Bernard Hicks was an employee of the Massachusetts Department of Transportation ("MassDOT") from November 10, 2008, to March 23, 2019. See Sec. Am. Compl. 6 & ¶ 71 [#13]. In March 2016, Hicks took intermittent leave under the Family and Medical Leave Act ("FMLA") to care for his father, who had dementia. Id. ¶ 1. During his period of intermittent leave, Hicks's supervisor, Director of Facilities Defendant Francois, along with Assistant Secretary of Human Resources Jesse Saint Cyr, assigned him four additional departments to manage. Id. at ¶ 2. When Hicks expressed concern that he had been given an unreasonable amount of work, Defendant Francois and Assistant Secretary Saint Cyr threatened to fire him if he did not manage his new assignments. Id. ¶ 5. Hicks alleges that this reassignment was done "under the disguise" of a department reorganization, but that he was the only employee given so many additional responsibilities. Id. ¶ 3. He reached out to Defendant Julian Tynes in the Civil Rights Office, but was told that "Civil Rights has nothing to do with it" and that he should "complain to the Feds." Id. ¶ 9.

From August of 2016 until May of 2017, Hicks took full-time FMLA leave to address his own health, the decline of which he attributes to his increased workload and tense work environment. Id. ¶¶ 10–11, 18. While on leave, Hicks was approved for sick leave benefits and pay and received one paycheck before his benefits were revoked. Id. ¶ 12. He links the revocation to the involvement of the Department's Americans with Disabilities Act ("ADA") Coordinator, Allen Montenko, and alleges that the reasons he was given for the revocation

conflicted with stated policy, and that the revocation was, in fact, a retaliation by Assistant

Secretary of Human Resources Jesse Saint Cyr. Id. When Hicks reached out to the Deputy

Director of Human Resources for assistance, an attorney from that department stepped in and

"[gave Hicks] a hard time." Id. ¶ 13. Ultimately, Hicks went without pay or benefits while on

leave for nine months. Id. ¶ 14.

On May 17, 2017, one day before he returned to work, ADA Coordinator Allen

Montenko confirmed that Hicks would be returning to his previous position and previous office

location. Id. ¶ 21. Instead, when Hicks arrived, he was demoted to a different job managing

twenty-nine Registry of Motor Vehicle offices and was seated at a desk on an otherwise empty

floor without a computer, telephone, or any staff. Id. ¶¶ 22–25. Hicks's assigned parking location

was moved from the "executive garage" to "in front of a dumpster." Id. ¶ 26.  To address what he

viewed as retaliation, Hicks requested information about his position change from his supervisor

Defendant Francois and Deputy Director of Human Resources Mathew Knosp, and reached out

to ADA Coordinator Montenko.[4] Id. ¶ 26.

On May 26, 2017, Defendant Francois reprimanded Hicks for "not doing [his] job,"

despite Hicks's contention that he lacked needed resources. Id. ¶ 27. Defendant Francois then

assigned Hicks the additional task of validating the parking tickets for employees on an entire

floor. Id. ¶ 29.

Three weeks after Hicks's return to the office, Defendant Francois and Deputy Director

of Human Resources Knosps had yet to formally reinstate him as an employee, and, as a result,

he was not paid on time. Id. ¶ 28. Moreover, Human Resources never responded to Hicks's

---

[4] Hicks notes that ADA Coordinator Montenko did not respond to his outreach and that his other
efforts were "to no avail." Sec. Am. Compl. ¶ 26 [#13].

request that his benefits be reinstated, leaving him without medical benefits. Id. ¶¶ 37-38, 41. Hicks's health declined. Id. ¶ 31. In June 2017, Psychiatric and Mental Health Clinical Nurse Specialist Gail Leslie "notified" MassDOT of Hicks's disability. Id. ¶ 64. He sought permission to attend weekly therapy sessions requiring the use of 15-30 minutes of his lunch or sick time, and though ultimately approved, he alleges he was questioned excessively, and the process unnecessarily stalled. Id. ¶¶ 32–33.

On July 27, 2017, Hicks filed an internal MassDOT civil rights complaint against Defendant Francois and the Assistant Secretary of Human Resources, Jesse Saint Cyr. Id. ¶ 54. After filing the complaint against HR, Assistant Secretary of Human Rights Defendant Tynes advised Hicks to bring any issues that would typically go through HR directly to him. Id. ¶ 44. When Hicks complied, he received no response, and subsequently appealed to Director of Employee and Labor Relations Defendant Maria Rota, from whom he also received no response. Id. ¶¶ 45-47.

Six months after his May 2017 return from leave, Hicks was placed on unpaid "protective leave" by Assistant Secretary of Civil Rights Defendant Tynes. Id. ¶¶ 41, 51.[5] Hicks was unable to find a description of that type of leave in his employee manual and his inquiries about its ramifications went unanswered. Id.

On January 29, 2018, the investigation into Hicks's complaint against Defendant Francois and the Assistant Secretary of Human Resources, Jesse Saint Cyr was closed without a finding. Id. ¶¶ 55–56. Hicks also lodged complaints with: the Attorney General's Fair Labor Division, which gave him a right to sue letter, and with "senior management, ADA Coordinator,

---

[5] According to the state court complaint, Hicks was first placed on paid administrative leave on November 1, 2017 and then switched, without explanation, to unpaid protective leave at least as of December 6, 2017. State Court Complaint ¶¶ 68-70 [#23-1].

Human Resources, and the Office of Diversity and Civil Rights MCAD/EEOC, to no avail." Id. ¶¶ 38–39, 52. In June 2018, Clinical Nurse Specialist Gail Leslie again "notified" MassDOT of Hicks's disability, and recommended that he be placed on Disability Retirement. Id. ¶¶ 73, 76.

On March 23, 2019, MassDOT sent a letter terminating Hicks's employment without explanation or opportunity for a hearing. Id. ¶¶ 71–72.[6] In August 2019, Hicks's Medical Professional, Gail Leslie, again recommended to MassDOT that Hicks be placed on Disability Retirement. Id. ¶ 76. That same month, the Massachusetts State Retirement Board asked MassDOT to complete within fifteen days documentation required to process Hicks's disability retirement. Id. ¶¶ 78-79. MassDOT failed to submit the application for four months, and then did so only after Hicks emailed asking them to do so twenty-three times. Id. ¶¶ 84–85. When Hicks finally received a copy of the documentation, it was missing critical information. Id. ¶ 87. On January 6, 2020, Hicks filed a complaint with the Equal Opportunity Employment Commission and was subsequently sent a notice of dismissal and right to sue letter. Id. ¶¶ 91, 95; see also EEOC documents [#13-1].[7]

IV. Standard of Review

"When faced with motions to dismiss under both 12(b)(1) [for lack of subject-matter jurisdiction] and 12(b)(6) [for failure to state a claim], a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first....It is not simply formalistic to decide the jurisdictional issue when the case would be dismissed in any event for failure to state

---

[6] Hicks alleges that by the time of his termination, he was without medical benefits for a period of almost two years. Sec. Am. Compl. ¶¶ 12, 41, 71. This period includes the nine months that he was out on leave, the six months that he returned to work, and the months that he was placed on protective leave up leading up to his termination. Id. ¶ 41.

[7] Plaintiff's Supplemental Filing [#26] offered verification that he was under an additional medical doctor's care from March 2017 on, and that the doctor filled out a disability retirement application for him in April 2019.

a claim. Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not being on the merits, is without res judicata effect." Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995).

On a motion pursuant to 12(b)(1), the "party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995). Where a defendant challenges the "sufficiency" of the purported basis for subject-matter jurisdiction, as opposed to the accuracy of the jurisdictional facts asserted, "the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in [the plaintiff's] favor, and dispose of the challenge accordingly." Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

In considering a motion to dismiss under Rule 12(b)(6), the court "presumes that the facts are as properly alleged by plaintiffs and/or reflected in other properly considered records, with reasonable inferences drawn in plaintiffs' favor." Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014). "The make-or-break standard...is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.). "There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the cumulative effect of the complaint's factual allegations." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (internal quotation omitted).

V.  Analysis

The Second Amended Complaint [#13] asserts claims under the ADA for discrimination on the basis of Plaintiff's disability, failure to accommodate that disability, and retaliation as well as state tort claims for intentional infliction of emotional distress. See Sec. Am. Compl. [#13] at ¶¶ 35, 49, 57, 64, 65-70, 93, 97; see also Defs.' Mem. 4 [#23]. Defendants argue that Plaintiff's claims under the ADA are subject to dismissal, and that the court therefore lacks subject matter jurisdiction over this action, which otherwise brings only state law claims. Defs.' Mem. 4-6, 5 n.5 [#23].

Plaintiff asks the court to use discretion to retain jurisdiction over his ADA claims because state agencies can be sued in federal court where their behavior is "reckless, ruthless, [or] deliberate with malevolence." Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl's Opp'n") 2 [#25]. Plaintiff provides no citation to support this discretion to retain jurisdiction and the court can find none. Instead, the court proceeds to evaluate Plaintiff's ADA claims under the applicable legal standards.

A.  ADA Claims against MassDOT

Title I of the ADA prohibits "covered entit[ies]" from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The court construes the Second Amended Complaint [#13] as seeking to bring claims against MassDOT under this Title.

The Supreme Court has found that Title I of the ADA does not abrogate the states' sovereign immunity under the Eleventh Amendment, and, thus, that suits under Title I brought in federal court by state employees against the state or state agencies are barred. See Board of

Trustees of University of Alabama v. Garrett, 531 U.S. 356, 360, 374 (2001); see also Irizarry-Mora v. Univ. of Puerto Rico, 647 F.3d 9, 11 n.1 (1st Cir. 2011) ("In the absence of consent, waiver, or abrogation, the Eleventh Amendment bars suit against states themselves regardless of the form of relief sought"). Where there has been no waiver of the government's sovereign immunity, Plaintiff's claims against Defendant MassDOT brought under Title I of the ADA are DISMISSED.[8]

    B.   ADA Claims Against Individual Defendants

        Plaintiff's claims against the individual Defendants must also be dismissed because the ADA only places liability on employers, not coworkers. See Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 52 (1st Cir. 2011) ("Title I of the ADA, like Title VII of the Civil Rights Act, addresses the conduct of employers only and does not impose liability on co-

---

[8] Plaintiff would not fare any better had he asserted his claim under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although the First Circuit has left open the question whether employment discrimination claims can be brought against an entity under Title II, see Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 17 (1st Cir. 2006) ("The law in this circuit remains unclear as to whether Title II of the ADA even applies to claims of employment discrimination…We need not resolve that issue in this appeal…"), a majority of circuits have found that they cannot. See Logie v. Massachusetts Bay Transportation Auth., 323 F. Supp. 3d 164, 168 (D. Mass. 2018) (collecting cases). Moreover, even if Plaintiff could bring an employment discrimination claim under Title II, Plaintiff still could not overcome the sovereign immunity problem. In Tennessee v. Lane, the Supreme Court held that some claims may indeed be brought against the states under Title II of the ADA because of the importance of ensuring public access. Tennessee v. Lane, 541 U.S. 509, 531 (2004). In reaching that conclusion, the Court reviewed Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001), in which it "concluded that Title I of the ADA was not a valid exercise of Congress' § 5 power to enforce the Fourteenth Amendment's prohibition on unconstitutional disability discrimination in public employment" where "Congress' exercise of its prophylactic § 5 power was unsupported by a relevant history and pattern of constitutional violations." Tennessee v. Lane, 541 U.S. 509, 521 (2004). Thus, even if employment claims could be brought under Title II of the ADA, there would be no basis for finding that Congress had validly abrogated the states' sovereign immunity as to any such claim.

workers") (internal quotation omitted)). Any claims brought under Title I of the ADA against Defendants Rota, Tynes, and Francois in their personal capacities are, thus, DISMISSED.

      C.  <u>Intentional Infliction of Emotional Distress</u>

      Defendants contend that, where Plaintiff's ADA claims have been dismissed, the court has no basis to assert supplemental jurisdiction over the state law claims, or, in the alternative, that the court should decline to exercise discretionary jurisdiction where Plaintiff is pursuing state law claims concurrently in state court. Defs.' Mem. 6 [#23]. Although the court has some discretion to exercise jurisdiction over the state law claims despite the dismissal of the ADA claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988). This is such a usual case and, thus, Plaintiff's remaining state law claims are DISMISSED. This dismissal is without prejudice to refiling in state court to the extent they are not barred by res judicata as a result of the judgment in the state court action.

      D.  <u>Colorado River Doctrine</u>

      In the alternative, Defendants contend that, in light of the ongoing state court litigation, to "avoid duplicative litigation and discovery, and a risk of inconsistent dispositions," this court should issue a stay pursuant to the <u>Colorado River</u> Doctrine. Defs.' Mem. 8 [#23] (citing <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 818 (1976)). Both because the state court litigation has now concluded, <u>see</u> Defendants' Notice of State Court Decision [#27], and all claims in this matter have been dismissed, the court does not reach this argument.

VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, to Stay

[#22] is GRANTED.

IT IS SO ORDERED.

Date: January 5, 2021                                   /s/ Indira Talwani
                                                        United States District Judge